IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                         Criminal Action No. 3:09cr148

THOMAS G. WYATT,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Thomas G. Wyatt's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 66.) The United States responded in opposition, (the "Opposition"), (ECF No. 71), and Wyatt replied (the "Reply").[1] (ECF No. 72.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion in part and reduce Wyatt's sentence by ten months.

### I. Background

On September 24, 2010, Wyatt pled guilty to Possession with the Intent to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One); and Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1) (Count Four). (Presentence Report ("PSR") 1, ECF No. 60.) On November 10, 2010, a jury convicted Wyatt of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c) (Count Three). (*Id.* 6.)

---

[1] Wyatt filed additional *pro se* supplements to his Motion for Compassionate Release. (ECF Nos. 77, 78.)

The PSR describes the facts underlying Wyatt's offenses. On November 1, 2007, Richmond Police Officers patrolling in the Hillside Court section of Richmond heard two gun shots near their position. (*Id.* 7.) When they arrived at where the shots had originated from, they saw Wyatt standing outside near the rear of a building. (*Id.*) Wyatt started to walk away as one officer approached, however, he stopped when he saw another officer coming toward him in the opposite direction. (*Id.*) After putting Wyatt in investigative detention, the officers found a firearm inside a trash can at the building where Wyatt was originally seen. (*Id.*) "[T]he firearm was cocked, the firearm was warm to the touch, and the firearm smelled of burnt gun powder." (*Id.*) "The Virginia Department of Forensic Science identified primer residue on both of Mr. Wyatt's hands." (*Id.* 7.) Wyatt informed the officers that he had narcotics on his person and was found with 3.5 grams of crack cocaine in his underwear. (*Id.*) Wyatt's DNA was also found on the firearm. (*Id.* 8.)

After being found guilty of the three offenses, the Probation Office prepared a PSR for Wyatt. The PSR calculated that Wyatt faced a combined offense level of 16. (PSR ¶ 75.) With a criminal history category IV,[2] Wyatt faced a Guidelines range of 33–41 months for Counts One and Four. (*Id.* ¶ 77.) He faced a mandatory minimum sentence of ten years on Count Three. (*Id.*) On February 10, 2011, the Honorable James R. Spencer sentenced Wyatt to 12 months month on Counts One and Four, running concurrent, and 120 months on Count Three, running consecutive to the sentences imposed on Counts One and Four, for a total of 132 months' imprisonment. (J. 1–2, ECF No. 47.) The Bureau of Prisons (BOP) calculates Wyatt's release date as July 31, 2024. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

---

[2] Wyatt has committed two felony drug offenses as an adult: possession of cocaine to possession of cocaine with intent to distribute. (PSR ¶¶ 30, 37.)

2

On August 11, 2020, Wyatt filed his *pro se* Motion for Compassionate Release. (*Pro Se* Mot., ECF No. 58.) On November 24, 2020, after being appointed counsel, Wyatt filed a second Motion for Compassionate Release. (Mot. 1.) In the Motion, Wyatt describes the current public health crisis caused by COVID-19, and the conditions at Federal Correctional Institution (FCI) Fort Dix. (*See generally* Mot. 3–5.) In doing so, Wyatt contends that he faces an increased risk for illness from COVID-19 based on chronic health conditions consisting of "asthma, chronic kidney disease, pre-diabetes, and high cholesterol." (*Id.* 8.) Further, he tested positive for the COVID-19 virus in October 2020. (*Id.* 4.) Wyatt, currently thirty-two years old, avers that he has a viable release plan in which he will live with family and learn a skilled trade from his father. (*Id.* 17.) In support of his release, Wyatt states that he has participated in GED coursework, he works in the prison's food service department and has done so since 2016, he has committed only one minor disciplinary infraction, and he has been given a low security classification while incarcerated. (*Id.*)

The United States opposes Wyatt's request for Compassionate Release. (Opp'n, ECF No. 71.) The United States does not contest Wyatt's health conditions as presenting an "extraordinary and compelling" reason for compassionate release. (Opp'n 1.) However, the United States contends that Wyatt has "failed to establish that the [18 U.S.C.] § 3553 factors warrant releasing him to a society that he has plainly endangered four years earlier" than his current release date. (*Id.*) Further, the United States avers that Wyatt's original crimes were violent, given the use and discharge of a firearm. (*Id.* 13.)

As of April 28, 2021, approximately 2,015 inmates—out of approximately 2,761 inmates total at FCI Fort Dix—have tested positive for the COVID-19 virus. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus. Also, as of April 28, 2021, Fort Dix FCI has

3

vaccinated 247 staff and 1481 inmates. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus.

## II. Legal Standards

### A. Compassionate Release Under the First Step Act Section 603

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[3] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir.

---

[3] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

4

2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### 1. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) (4th Cir. Dec. 2, 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No.

5

3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### 2. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[4]

---

[4] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates file (or counsel acting on behalf of inmates) directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

---

term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1) (A) extraordinary and compelling reasons warrant the reduction; or
    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

### 3. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### B. Modification of a Sentence under the First Step Act Section 404

In addition to Section 603(b) of the First Step Act, which addressed compassionate release, the First Step Act amended drug penalties in a different provision of the statute. Through Section 404, the First Step Act expressly permits sentence modifications for certain drug offenses. *See United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019), *as amended* (Nov. 21, 2019) ("the distinct language of the First Step Act compels the interpretation that motions for relief under that statute are appropriately brought under § 3582(c)(1)(B)").

The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Pub. L. No. 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Fist Step Act at § 404(a), 132 Stat. at 5222. These specified sections modified the drug amounts required to trigger mandatory minimums for crack cocaine trafficking offenses from 5 grams to 28 grams with respect to the 5-year mandatory minimum and from 50 grams to 280 grams with

8

respect to the 10-year mandatory minimum. Fair Sentencing Act, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. The Fair Sentencing Act also eliminated the 5-year mandatory minimum for simple possession of crack. *Id.* at § 3, 124 Stat. 2372, 2372; *see also Dorsey v. United States*, 567 U.S. 260, 276–77 (2012) (explaining sentencing discrepancies for certain drug offenses that the Fair Sentencing Act sought to remedy). "Although Section 2 of the Fair Sentencing Act did not alter the terms of imprisonment specified in Subsections 841(b)(1)(A)(iii) and (B)(iii), it did alter the amounts of crack cocaine required to trigger those terms." *United States v. Woodson*, 962 F.3d 812, 815 (4th Cir. 2020). Therefore "the Fair Sentencing Act changed the quantities of crack cocaine to which Subsection 841(b)(1)(C) applies, [and] 'modified' the statutory penalties of that subsection for purposes of crack cocaine offenders within the meaning of the First Step Act." *Id.* at 817.

The First Step Act imposes three eligibility requirements. To qualify for consideration for relief pursuant to the First Step Act, a defendant must show that he or she (1) committed a covered offense before August 3, 2010; (2) did not have his or her sentence imposed or reduced under sections 2 or 3 of the Fair Sentencing Act of 2010; and, (3) did not file a previous motion under § 404 of the First Step Act that that Court decided on the merits. See United States v. Hardnett, 417 F. Supp. 3d 725, 734 n.7 (E.D. Va. 2019) (E.D. Va. Oct. 24, 2019) (quoting First Step Act statute and limitations contained therein).

After finding that a defendant committed a covered offense under First Step Act 404, the district court must perform three steps when evaluating a sentence reduction pursuant to that section: (1) "accurately recalculate the Guidelines sentence range;" (2) "correct original Guidelines errors and apply intervening case law made retroactive to the original sentence;" and, (3) consider the § 3553 factors to determine an appropriate sentence. *United States v.*

*Collington*, No. 19-6721, 2021 WL 1608756, at *4 (4th Cir. Apr. 26, 2021) (citations omitted). In this manner, Section 404 proceedings, while not a plenary resentencing, "contemplate[] both a broader resentencing inquiry and greater procedural protections than § 3582(c)(2) modifications." *Id.* at *10.

### III. Analysis

After due consideration, the Court will grant the Motion in part and reduce Wyatt's sentence by ten months in light of the First Step Act of 2018, the relevant sentencing factors, and his postconviction conduct.[5]

First, as the United States has stipulated, the Court determines that Wyatt has sufficiently exhausted his administrative remedies. (Opp'n 10.) Next, The Court finds that Wyatt's health conditions raise serious concerns about his well-being should he contract COVID-19 again while

---

[5] Counsel for Wyatt did not file a motion to reduce his sentence pursuant to First Step Act Section 404. Nonetheless, the Court considers the notable changes in sentencing law since it imposed his sentence in 2009 and finds a partial reduction appropriate. Moreover, some courts have recognized that partial sentence reductions may be appropriate under First Step Act Section 603.

For instance, a court in the Southern District of New York recently granted a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) for a 54-year-old inmate who, along with his co-defendant, ran a cocaine and heroin racketeering enterprise and who was found guilty by a jury of having participated in the torture and murder of a government confidential informant. *United States v. Rodriguez*, 492 F. Supp. 3d 306, 308 (S.D.N.Y. 2020). In *Rodriguez*, Judge Jed S. Rakoff found that the defendant had "undertaken extraordinary efforts at rehabilitation" that "weigh[ed] strongly in favor of a sentence reduction," and reduced the defendant's sentence from life to 30 years' imprisonment. *Id.* at 314. Although the court did not reduce the defendant's sentence to time served, Judge Rakoff observed that the United States Court of Appeals for the Second Circuit "recognized that the [compassionate release] statute provided . . . flexibility [in sentencing], *see United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020), thus allowing a [sentence reduction] in this case." *Id.*

The United States Court of Appeals for the Fourth Circuit has not addressed in published authority whether granting compassionate release offers only the opportunity to impose a sentence of time served or whether a court may grant a partial sentence reduction. Absent such authority, and considering the record before it, the Court finds a reduction from 132 months' imprisonment to 122 months' imprisonment appropriate here.

10

incarcerated, making him eligible for compassionate release consideration. In its Opposition, the United States concedes that Wyatt's medical conditions and chronic kidney disease qualify an "extraordinary and compelling" reason for compassionate release eligibility. (Opp'n 10.) However, the United States contends that despite Wyatt's medical conditions he has not demonstrated that FCI Fort Dix is at a heightened risk of a coronavirus outbreak, and his release plan does not place him at a lower risk of infection due to similar infection rates among prisoners at FCI Fort Dix and the population in Richmond, Virginia (where Wyatt plans to return). (Opp'n 11–12.) To the contrary, medical professionals have opined that conditions in correctional facilities, and FCI Fort Dix, lead to a greater risk of contracting COVID-19 than not.[6] (*See e.g.* Declaration of Joe Goldenson, M.D., ECF No. 66-3 10.)

Turning to the relevant sentencing factors, the statutory changes enacted through the First Step Act of 2018, and Wyatt's postconviction record, the Court will grant the Motion in part and reduce Wyatt's sentence by ten months. Wyatt's criminal history and underlying convictions demonstrate that despite having committed mostly non-violent drug crimes, he poses a safety threat due to his use of a weapon as part of the underlying offenses. The PSR shows that Wyatt has committed multiple felony drug offenses as an adult, including possession of cocaine and possession of cocaine with intent to distribute.[7] Furthermore, Wyatt discharged a weapon in furtherance of drug trafficking while possessing the weapon as a convicted felon, a serious

---

[6] Further, at FCI Fort Dix roughly seventy percent of inmates at that facility have tested positive. Since the beginning of the pandemic, approximately 16,000 Richmond residents have been infected with the virus, a rate of six percent. (Tracking Coronavirus in Richmond, Va., THE NEW YORK TIMES, https://www.nytimes.com/interactive/2021/us/richmond-city-virginia-covid-cases.html.)

[7] This Court notes that Wyatt in 2009 was sentenced to eight years in the Circuit Court of Richmond for possession of cocaine with intent to distribute. (PSR ¶ 37.) The underlying conduct in this case occurred a mere eighteen months prior, in November 2007. (*Id.* ¶ 21.)

offense for which he has been convicted.[8] The record does not justify granting the Motion in full and reducing Wyatt's sentence to time served.

Nonetheless, the changes to penalties for crack cocaine offenses and his postconviction conduct warrant some relief. Relevant here, Congress modified through the First Step Act of 2018 the penalties for drug offenses involving cocaine base. *See, e.g., Woodson*, 962 F.3d at 815 (holding that the First Step Act of 2018 applied to convictions under § 841(b)(1)(C)); *see also United States v. Black*, 388 F. Supp. 3d 682, 688 (E.D. Va. 2019) (finding First Step Act eligibility when sentences for other offenses grouped with covered drug offense). In 2009, Wyatt was subject to a statutory 20-year maximum sentence for his violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (PSR ¶ 77.) As the Fourth Circuit explained in *Woodson*, the First Step Act "modified" the statutory penalties of § 841(b)(1)(C) as applied to crack cocaine offenders. 962 F.3d at 817. As a result, Wyatt's drug offense in Count One—Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)—falls under First Step Act § 404.[9] Wyatt was sentenced to an aggregate of 132 months' imprisonment:

---

[8] *Compare* the case at bar *with United States v. Jones*, 2021 WL 217157, at *1 (Jan. 21, 2021) (denying compassionate release for the defendant who despite having a criminal history which was largely non-violent, was convicted for conspiracy to distribute cocaine, was found with multiple kilograms of drugs, and weapons, and has a significant criminal history otherwise); *see also United States v. Bryant*, 2020 WL 7497805, at *1,*6 (E.D. Va. Dec.21, 2020) (denying compassionate release—despite defendant having no violent offenses in his criminal history—due to his involvement in a "sprawling drug trafficking enterprise," having over 280 kilograms worth of drugs, and failing to comply with drug testing); *United States v. Miller*, 2020 WL 4547809, at *1 (E.D. Va. Aug. 6, 2020) (denying compassionate release—despite his crime stemming from a non-violent drug charge—due to other previous violent crimes, failing out of a drug rehab program, and having several disciplinary incidents while incarcerated).

[9] For Section 404 eligibility, the Court first concludes that Wyatt committed a covered offense because he committed his drug offense prior to August 3, 2010. Second, the record makes clear that Wyatt did not have his sentence imposed or reduced under Sections 2 or 3 of the Fair Sentencing Act. Third, Wyatt did not file a previous motion under § 404 of the First Step Act that a court decided on the merits. Therefore, this Court may consider a reduction of his

12 months for Count One, the drug offense; 12 months Count for Four, Possession of a Firearm by a Convicted Felon; and, 120 months for Count Three, Possession of a Firearm in Furtherance of a Drug Trafficking Crime.[10]

Considering the modified penalties under the First Step Act and the additional guidance from the Fourth Circuit regarding motions filed pursuant to § 3582(c), the Court finds a ten-month sentence reduction appropriate here. Turning to the § 3553(a) factors, Wyatt has been in custody since July 19, 2010. (PSR 2.) He has served most of his 132-month sentence. Granting Wyatt a ten month reduction so that he serves a 122 month sentence—more than ten years—will afford adequate deterrence to his criminal conduct. Moreover, Wyatt will remain incarcerated for more than two years before beginning a three-year term of supervised release. Violation of which, as Wyatt notes, risks his return to prison. (Mot. 17.)

A ten-month sentence reduction also takes into consideration the changed penalties for crack cocaine offenses and Wyatt's postconviction conduct. In *United States v. Martin*, the Fourth Circuit explained that if an individual is eligible for a sentence reduction, the District

---

sentence under § 404 of the First Step Act. *See, e.g., Black*, 388 F. Supp. 3d at 686 (discussing First Step Act eligibility under § 404).

[10] In 2009, the Court sentenced Wyatt to 12 months for his drug offense (Count One) and for unlawfully possessing a firearm (Count Four), which was below the then-applicable Guidelines range of 33–41 months. Wyatt received the mandatory minimum sentence of 120 months for possessing a firearm in furtherance of a drug trafficking crime (Count Three). The table below summarizes the differences in the Sentencing Guidelines applicable to Wyatt after the First Step Act:

|  | Original Judgment (2009) | Fair Sentencing Act/First Step Act (2021) |
| --- | --- | --- |
| Total Offense Level: | 16 | 14 (Count One) |
| Criminal History Category | IV | IV |
| Guideline Range | 33-41 months | 27-33 months (Count One) |
| Mandatory minimum | 120 months (Count Three) | 120 months (Count Three) |
| Sentence Imposed | 132 months | 122 months |

13

Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." 916 F.3d at 397–98. Wyatt has shown progress and rehabilitation throughout his incarceration, such as participating in GED coursework and other rehabilitative programming. (Mot. 17.) He works in the prison's food service department and has done so since 2016. (*Id.*) He has also had only one minor disciplinary infraction while incarcerated. Wyatt has been classified as a medium risk recidivism level and enjoys a low security classification. (*Id.*) The Court commends Wyatt's record and hopes that he continues to take advantage of BOP programming while he completes the remainder of his sentence.

In sum, Wyatt's record does not warrant immediate release, but the Court finds a ten month sentence reduction appropriate.

## IV. Conclusion

For the reasons explained above, the Court will grant in part the Motion and reduce Wyatt's sentence ten months.

/s/ M. Hannah Lauck
United States District Judge

Date: May 3, 2021
Richmond, Virginia